Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800

United States District Court
Southern District of New York                    7:20-cv-04024

| | |
|---|---|
| Theresa Sencen, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Froneri US, Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Froneri US, Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream bars purporting to be dipped in milk chocolate under the Häagen-Dazs brand ("Product").

2.      The Product is available to consumers from retail and online stores of third-parties and is sold in 3 OZ bars, individually and in packages of three.

3.      The relevant front label representations include "Häagen-Dazs," "Milk Chocolate," "Vanilla ice cream dipped in, then drizzled in rich milk chocolate," a piece of chocolate and the Product.



4.     The representations are misleading because although the Product is represented as milk chocolate, it actually contains the one ingredient which is prohibited in real chocolate – vegetable oils.

5.     Chocolate has been a frequent target of "food fraud," where economically-motivated actors replace high value chocolate liquor with the lower priced vegetable oils.[14]

6.     Consumers prefer chocolate to its cheaper imitations, because it has a smooth and creamy taste and provides greater satiety compared to the waxy mouthfeel and lesser satiety when

---

[14] Ivan Bohačenko, et al., "Chocolate authenticity control concerning compliance with the conditions for adding cocoa butter equivalents as laid down by directive 2000/36 EC," Czech Journal of Food Science 23 (2005): 27-35.

cacao butter is replaced or supplemented with vegetable oils.

7.    Standards of identity for chocolate were established to protect consumers from economic adulteration – the substitution of more valuable ingredients like cacao fat and replacement with less valuable, lower quality ingredients like vegetable oils. *See* 21 U.S.C. § 343(g).

8.    Standards of identity reflect a recognition by Congress of the inability of consumers to determine the relative merits of a variety of products superficially resembling each other based on informative labeling in places other than a product's front label, such as from an ingredient list.

9.    Standards of identity also reflect the intention of Congress to preclude manufacturers from determining for themselves whether a food purporting to be or containing a standardized food was permitted to contain different ingredients or different amounts of ingredients.

10.    Standards of identity are a bulwark against consumer deception by:[15]

  1. Preventing confusion by reducing uncertainty faced by consumers making purchasing decisions who must select amongst numerous similarly labeled products;

  2. Eliminating possibility of economic adulteration of standardized foods through substitution of lower quality ingredients;

  3. Increasing the informational value of a product name, i.e., "chocolate," through restricting the range of information that can be conveyed by that product name, equivalent to a "shortcut" (i.e., "no vegetable oils") for typical harried grocery store purchasers;

  4. Once a food has been standardized, the product name associated with that food, i.e., "chocolate," acquires a precise and specific meaning that it did not have prior to the

---

[15] Christopher Chen, "Food and drug administration food standards of identity: Consumer protection through the regulation of product information." Food & Drug LJ 47 (1992): 185.

creation of the standard.

11.    Where a product is represented as a standardized chocolate, it is required to "conform[s] to such definition and standard." *See* 21 U.S.C. §343(g).

12.    Consumers have come to expect that chocolate products will have a fixed amount of cacao fat. *See* 21 C.F.R. Part 163 ("Cacao Products"); 21 C.F.R. § 163.123(a) ("Sweet chocolate.") ("not less than 15 percent by weight of chocolate liquor"); 21 C.F.R. § 163.124(a)(2) ("White chocolate.") ("contains not less than 20 percent by weight of cacao fat"); 21 C.F.R. § 163.124 ("Milk chocolate.") ("contains not less than 10 percent by weight of chocolate liquor").

13.    Consumers have come to expect that chocolate products will not contain vegetable oils.  *See, e.g.,* 21 C.F.R. § 163.124(b) (optional ingredients in milk chocolate include cacao fat, nutritive carbohydrate sweeteners, spices, natural and artificial flavorings, dairy ingredients and emulsifying agents).

14.    Over ten years ago in response to a proposal to modify the chocolate standards, industry leader Mars Wrigely was adamant in its opposition, stating:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.[16]

15.    Through its Agriculture and Markets Law ("AGM") and accompanying regulations, New York State has adopted and incorporated in its entirety the standards of identity for cacao products.[18] *See* 1 NYCRR § 250.1(a)(12) ("the commissioner hereby adopts the following as the standards of identity and/or standards of quality, and tolerances for food and food products as published in title 21 of the Code of Federal Regulations…21 CFR part 163, containing the Federal

---

[16] Mars US Announces Support for Current Chocolate Standard of Identity, Press Release, September 17, 2007.
[18] Federal Food, Drug and Cosmetic Act ("FFDCA").

definitions and standards for *Cacao Products* at pages 562-570.") (italics in original).[19]

16.     The result is that New York State labeling requirements for milk chocolate are identical to those established by the FDA.

17.     In addition to being consumed in pieces, chocolate can also be used as a coating. *See* 21 C.F.R. § 163.130(c) ("The name of the food is 'milk chocolate' or 'milk chocolate coating'.").

18.     In ice cream and frozen desserts, the high melting point of cacao fat makes using chocolate more challenging.

19.     However, this obstacle can be overcome through careful use of emulsifying agents or in many instances, low-melting-point coatings which contain vegetable oils and fats.

20.     Consumers are not generally aware of such coatings because they are sold only to manufacturers under such terms as "Ice Cream Coating," "Paddle Pop Paste" and other similar designations.

21.     When applied to foods sold to consumers, these coatings are required to be truthfully identified as "milk chocolate and vegetable fat coating." *See* 21 C.F.R. § 163.155(c) ("Alternatively, the common or usual name of the vegetable derived fat ingredient may be used in the name of the food, e.g., "milk chocolate and ___ oil coating", the blank being filled in with the common or usual name of the specific vegetable fat used.").

22.     Though the front label represents the Product as being coated in chocolate, it consists of a "milk chocolate and vegetable oil coating," with coconut oils, indicated on the ingredient list.

---

[19] Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR"); 1 NYCRR § 250.1(a)(12), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.

**INGREDIENTS: VANILLA ICE CREAM:** CREAM, SKIM MILK, SUGAR, EGG YOLKS, VANILLA EXTRACT. **MILK CHOCOLATE AND VEGETABLE OIL COATING:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), COCONUT OIL.

**INGREDIENTS: VANILLA ICE CREAM:** CREAM, SKIM MILK, SUGAR, EGG YOLKS, VANILLA EXTRACT. **MILK CHOCOLATE AND VEGETABLE OIL COATING:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), COCONUT OIL.

23.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

24.    The presence of chocolate – understood as excluding vegetable oils and vegetable fats – has a material bearing on price or consumer acceptance of the Product because chocolate provides greater satiety and a creamy and smooth mouthfeel compared to vegetable oils, which provide less satiety, a waxy and oily mouthfeel and leave an aftertaste.

25.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

26.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

27.    Had plaintiff and class members known the truth, they would not have bought the

Product or would have paid less for them.

28.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $6.49 for three 3 OZ bars, excluding tax, compared to other similar products represented in a non-misleading way. 3 OZ bars, individually and in packages of three

<u>Jurisdiction and Venue</u>

29.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

30.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

31.     Plaintiff Theresa Sencen is a citizen of New York.

32.     Defendant Froneri US, Inc. is a Delaware corporation with a principal place of business in Oakland, Alameda County, California and therefore is a citizen of California.

33.     "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

34.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, the purchase of the Product and the misleading representations relied upon by plaintiff.

35.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

36.    Plaintiff Theresa Sencen is a citizen of Valley Cottage, Rockland County, New York.

37.    Defendant Froneri US, Inc. is a Delaware corporation with a principal place of business in Oakland, California, Alameda County.

38.    Defendant is the world's largest ice cream conglomerate, representing the biggest manufacturers in Europe, Latin America and the United States.

39.    Defendant recently acquired the Nestle ice cream operations in the United States.

40.    During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal consumption and/or use in reliance on the representations the Product contained milk chocolate, understood as not containing vegetable oils.

41.    Plaintiff Theresa Sencen purchased the Häagen-Dazs vanilla milk chocolate ice cream bars at Shoprite in September 2019.

42.    Plaintiff bought the Product because she liked the product type for its intended use and expected it would only contain a milk chocolate coating, because that is what the front label said and because milk chocolate is understood by consumers to not contain vegetable oils.

43.    Plaintiff would buy the Product again if assured it did not contain vegetable oils and was real chocolate.

Class Allegations

44.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

45.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

46.    Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

47.     Plaintiff is an adequate representatives because her interests do not conflict with other members.

48.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

49.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

50.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

51.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

52.     Plaintiff incorporates by reference all preceding paragraphs.

53.     Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

54.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

55.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

56.     The presence of chocolate – understood as excluding vegetable oils and vegetable fats – has a material bearing on price or consumer acceptance of the Product because chocolate provides greater satiety and a creamy and smooth mouthfeel compared to vegetable oils, which provide less satiety, a waxy and oily mouthfeel and leave an aftertaste. The amount and proportion

of the characterizing component, chocolate, and the exclusion of vegetable oils, has a material bearing on price or consumer acceptance of the Product because consumers are willing to pay more for them.

57.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

58.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

59.    Plaintiff incorporates by reference all preceding paragraphs.

60.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

61.    The presence of chocolate – understood as excluding vegetable oils and vegetable fats – has a material bearing on price or consumer acceptance of the Product because chocolate provides greater satiety and a creamy and smooth mouthfeel compared to vegetable oils, which provide less satiety, a waxy and oily mouthfeel and leave an aftertaste. The amount and proportion of the characterizing component, chocolate, and the exclusion of vegetable oils, has a material bearing on price or consumer acceptance of the Product because consumers are willing to pay more for them.

62.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

63.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

64.    The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

65.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

66.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

67.    Plaintiff incorporates by reference all preceding paragraphs.

68.    The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

69.    The presence of chocolate – understood as excluding vegetable oils and vegetable fats – has a material bearing on price or consumer acceptance of the Product because chocolate provides greater satiety and a creamy and smooth mouthfeel compared to vegetable oils, which provide less satiety, a waxy and oily mouthfeel and leave an aftertaste. The amount and proportion of the characterizing component, chocolate, and the exclusion of vegetable oils, has a material bearing on price or consumer acceptance of the Product because consumers are willing to pay more for them.

70.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

71.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

72.    Plaintiff provided or will provide notice to defendant, its agents, representatives,

retailers and their employees.

73.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

74.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

75.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

76.   Plaintiff incorporates by reference all preceding paragraphs.

77.   The presence of chocolate – understood as excluding vegetable oils and vegetable fats – has a material bearing on price or consumer acceptance of the Product because chocolate provides greater satiety and a creamy and smooth mouthfeel compared to vegetable oils, which provide less satiety, a waxy and oily mouthfeel and leave an aftertaste. The amount and proportion of the characterizing component, chocolate, and the exclusion of vegetable oils, has a material bearing on price or consumer acceptance of the Product because consumers are willing to pay more for them.

78.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

79.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

80.    Plaintiff incorporates by reference all preceding paragraphs.

81.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 24, 2020

                                                     Respectfully submitted,

                                                     Sheehan & Associates, P.C.
                                                     /s/Spencer Sheehan
                                                     Spencer Sheehan
                                                     505 Northern Blvd Ste 311

Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-04024
United States District Court
Southern District of New York

Theresa Sencen, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Froneri US, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: May 24, 2020

/s/ Spencer Sheehan
Spencer Sheehan